IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Emmanuel Martinez, Donald Weygant, and)
Sandra Weygant,                       )
                                      )
                    Plaintiffs,       )
                                      )
            vs.                       )
                                      )    C.A. No. 6:03-0049-HMH
Duke Energy Corporation, Camp Dresser )
& McKee, Inc.,and Terex Corporation,  )    **OPINION & ORDER**
                                      )
                    Defendants,       )
                                      )
and                                   )
                                      )
Camp Dresser & McKee, Inc.,           )
                                      )
                    Third-Party Plaintiff, )
                                      )
            vs.                       )
                                      )
Thalle Construction Co., Inc.,        )
                                      )
                    Third-Party Defendant.)

This matter is before the court on (1) Thalle Construction Co., Inc.'s ("Thalle")

motion to strike entry of default pursuant to Rule 12(b)(5) or, alternatively, for permission to

file a late response and to set aside entry of default ("Thalle's motion"), and (2) Camp

Dresser & McKee, Inc.'s ("CDM") motion for default judgment against Thalle ("CDM's

motion").  For the reasons below, the court grants in part and denies in part Thalle's motion,

and denies CDM's motion as moot.

1

## I. Factual and Procedural Background

This is a personal injury case in which Emmanuel Martinez ("Martinez") and Donald Weygant ("Weygant") were electrocuted. In 1993, Western Carolina Sewer Authority ("WCSA") contracted with CDM to provide engineering services for several sewer system upgrade projects in Greenville, South Carolina. (Am. Compl. ¶ 10.) In 1998, WCSA and CDM entered into a second contract involving a continuation of an original sewer project now called the Reedy River Trunk Sewer Project (the "project"). (Id. ¶ 11.)

Thalle was the general contractor for the project and provided its services under the direction of CDM. (Id. ¶ 14.) In 1999, Thalle rented a mobile crane needed for the project from Anthony Crane Rental, Inc. ("Anthony"). On March 6, 2000, while working as an employee of Thalle, Martinez was operating the mobile crane when it came into contact with the overhead power lines and electrocuted him. (Id. ¶ 17.) In an attempt to render aid, Weygant was also electrocuted. (Id. ¶ 18.) As a result, both Weygant and Martinez suffered severe injuries. (Compl. ¶¶ 19-20.) In March 2000, Weygant and Martinez filed for and received worker's compensation benefits pursuant to the South Carolina Workers Compensation Act. (Thalle's Mem. Supp. Thalle's Mot. 3.)

Weygant and Martinez filed an amended complaint on February 14, 2002, asserting negligence, strict liability, and breach of implied warranty against Duke Energy Corporation; negligence against CDM; and negligence, strict liability, and breach of implied warranty

against Terex Corporation.  In addition, Sandra Weygant seeks damages for loss of

consortium.[1]

In February 2003, CDM filed a third-party complaint against Thalle alleging

contractual indemnification.  CDM served Thalle by certified mail.  Thalle failed to plead or

otherwise appear, and CDM requested that the clerk of court enter default.  The Clerk entered

default against Thalle on April 24, 2003.  On May 12, 2003, CDM moved for entry of default

judgment.  On June 2, 2003, Thalle's moved to strike the clerk's entry of default, or

alternatively, for an order setting aside the entry of default and allowing Thalle an opportunity

to answer the CDM's third-party complaint.

In addition to the facts discussed above, the circumstances related to service of process

and Thalle's failure to timely plead are particularly relevant to the motion before the court.[2]

CDM's third-party summons and complaint was sent via certified mail, return receipt

requested, delivery restricted to addressee.  CDM's third-party summons and complaint was

addressed to George Pacchiana ("Pacchiana") but was signed for by Mike Perrone

("Perrone"), Thalle's supply and transportation coordinator.  (Thalle's Mem. Supp. Thalle's

Mot. Ex. A (Paul Mirabelli Aff. ¶¶ 10-12).)  CDM's third-party summons and complaint

were immediately forwarded to Paul Mirabelli ("Mirabelli"), Thalle's corporate

---

[1]The amended complaint also contained claims against Anthony.  Anthony has since
been dismissed without prejudice.  As such, the facts will omit any reference concerning
claims against Anthony.

[2]In addition, it appears that CDM contacted Thalle prior to filing third-party complaints
in an attempt to have Thalle or its insurance carriers assume their defense.  CDM received no
response from Thalle.  (CDM's Mem. Opp'n Thalle's Mot. Ex. A (Brad Gordon Aff.
¶¶ 5-8) .)

administrator.  (Id. Ex. A. (Mirabelli Aff. ¶ 13).)  Mirabelli, in turn, forwarded the summons

and complaint to Debbi Windnagle ("Windnagle") at Hilb, Rogal, and Hamilton Company of

Upstate New York, LLC ("HRH"), Thalle's insurance broker.  (Id. Ex. B (Windnagle Aff.

¶ 1).)

Because Thalle is located in New York and was insured at the time of the accident by

Reliance Insurance Company ("Reliance"), Windnagle forwarded the summons and complaint

GAB Robins North America, Inc. ("GAB") on March 19, 2003.[3]  (Id. Ex. B (Windnagle Aff.

¶ 2).)

GAB then sent an attorney request form to the Liquidation Bureau on behalf of Thalle.

(Id. Ex. D (Kathleen Kross Aff. ¶ 9).)  Before authorizing an attorney, the Liquidation

Bureau had to determine whether the case involved an allowable claim.  (Id. Ex. E (Patricia

Fischer Aff. ¶¶ 2-4).)  After review, Frank Basso ("Basso"), a senior claims examiner with

the Liquidation Bureau, determined that because the claims at issue in CDM's third-party

complaint involved a general liability loss which occurred outside of New York, the claims

---

[3]On October 3, 2001, Reliance was placed into liquidation by a court in Pennsylvania.
(Thalle's Mem. Supp. Thalle's Mot. Ex. C (Basso Aff. ¶ 3).)  On December 14, 2001, the
New York Supreme Court placed Reliance into receivership.  (Id. Ex. C (Basso Aff. ¶ 4).)  In
New York there is a Property/Casualty Insurance Security Fund (the "Fund") set up to pay
allowed claims of an authorized insurer who is unable to satisfy its obligations because of
insolvency.  (Id. Ex. C. (Basso Aff. ¶ 2).)  The Superintendent of the New York Department of
Insurance is responsible for administering the Fund.  (Id. Ex. C (Baffo Aff. ¶ 3.)  After Reliance
was declared insolvent and placed into liquidation, the Superintendent of Insurance was
appointed as the ancillary receiver, and the State of New York Insurance Department
Liquidation Bureau ("Liquidation Bureau") began administering the Reliance claims submitted
to the Fund.  (Id. Ex. C (Baffo Aff. ¶ 4).)  The Liquidation Bureau employed GAB as the third-
party administrator for the Reliance claims.  (Id.)

were precluded from coverage under the Fund until the claims were rejected by the South

Carolina Property and Casualty Insurance Guaranty Association.  (Id. Ex. C (Basso Aff.

¶ 7).)

On April 2, 2003, Basso learned that the South Carolina Property and Casualty

Insurance Guaranty Association had denied coverage.  (Thalle's Mem. Supp. Thalle's Mot.

Ex. C (Basso Aff. ¶ 10.)  After determining that the claims were allowable under the Fund,

Basso immediately authorized counsel for Thalle to defend its case.  (Id. Ex. C. (Basso Aff.

¶¶ 13-14.)  On May 2, 2003, Patricia Fischer ("Fischer"), executive assistant with the

Liquidation Bureau, began the task of locating counsel for Thalle.  After a number of

unsuccessful attempts to locate counsel, Fischer engaged the law firm of Gallivan, White &

Boyd on May 15, 2003.  (Id. Ex. E. (Fischer Aff. ¶¶ 6-9).)  When C. William McGee

("McGee") of Gallivan, White & Boyd was unable to obtain CDM's consent to an order

setting aside entry of default, Thalle's motion was filed.  (Id. Ex. F (McGee Aff. ¶¶ 4-8).)

On August 27, 2003, the court determined that it lacked subject matter jurisdiction

over the instant action due to Anthony's citizenship.  Accordingly, the court dismissed the

action.  The Plaintiffs appealed, and on May 2, 2005, the United States Court of Appeals for

the Fourth Circuit affirmed in part, reversed in part, and remanded the case.  Martinez v.

Duke Energy Corp., No. 03-2192, 2005 WL 1009648, at **1, 9 (May 2, 2005)

(unpublished).  The court dismissed Anthony without prejudice under Rule 21 of the Federal

Rules of Civil Procedure in order to preserve subject matter jurisdiction.  Id. at **5-9.

On remand, Thalle re-filed its motion to strike entry of default under Rule 12(b)(5), or

alternatively for permission to file a late response and for relief from entry of default on

March 10, 2006.  CDM did not re-file its motion for default judgment or respond to Thalle's

re-filed motion.  Regardless, because the court never addressed the merits of Thalle's and

CDM's motions before dismissing the case for lack of subject matter jurisdiction, the court

now considers the original motions as well as Thalle's re-filed motion.

## II. Discussion of the Law

### A.  Motion to Strike Entry of Default - Rule 12(b)(5)

Thalle moves pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure to

strike the entry of default.  Specifically, Thalle argues that CDM's third-party summons and

complaint, which were sent via certified mail, were received and signed for by an

unauthorized person.  The court disagrees.

Rule 4 of the Federal Rules of Civil Procedure provides for service of process upon a

corporation in accordance with the laws of the state in which the service is being effected.

See Fed. R. Civ. P. 4(h), 4(e)(1).  Rule 4 of the South Carolina Rules of Civil Procedure

provides for service "[u]pon a corporation . . . , by delivering a copy of the summons and

complaint to an officer, a managing or general agent, or to any other agent authorized by

appointment or by law to receive service of process."  S. C. R. Civ. P. 4(d)(3).  In addition,

Rule 4(d)(8) provides for service by certified mail and states,

> Service of a summons and complaint upon a [corporate] defendant . . . may be
> made . . . by registered or certified mail, return receipt requested and delivery
> restricted to the addressee. . . .  Service pursuant to this paragraph shall not be
> the basis for the entry of a default . . . unless the record contains a return
> receipt showing the acceptance by the defendant.  Any such default . . . shall
> be set aside pursuant to Rule 55(c) . . . if the defendant demonstrates to the
> court that the return receipt was signed by an unauthorized person.

S. C. R. Civ. P. 4(d)(8).

6

The first issue as to sufficiency of process is how "unauthorized person," as set forth in Rule 4(d)(8), is defined. Thalle argues that an authorized person is defined as "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" as set forth in Rule 4(d)(3). S.C. R. Civ. P. 4(d)(3). On the other hand, CDM argues that an authorized person is any person authorized to accept mail. In support of this proposition, CDM cites to <u>Langley v. Graham</u>, 472 S.E.2d 259 (S.C. Ct. App. 1996), which defines "authorized person" for purposes of service by certified mail upon a corporation as "an agent of the addressee who has been specifically authorized in writing by the addressee to receive his mail." <u>Id.</u> at 261 n.3 (quoting 62B Am. Jur. 2d Process, § 227 (1990)).

It is clear that Perrone was not an authorized person as defined by Rule 4(d)(3). However, Thalle has not demonstrated that he was an unauthorized person under the definition set forth in <u>Langley</u>. <u>See</u> S.C. R. Civ. P. 4(d)(8) (requiring the defendant to demonstrate that "the return receipt was signed by an unauthorized person"). Regardless of whether Thalle has proven Perrone was an unauthorized person, the second issue is whether such a technicality requires the court to strike the entry of default based on insufficiency of process. In <u>Roche v. Young Bros., Inc., of Florence</u>, 456 S.E.2d 897, 899 (S.C. 1995), discussing the dual purpose of Rule 4 states, the court states "[i]t confers personal jurisdiction

on the court and assures the defendant of reasonable notice of the action."[4]  The <u>Roche</u> court

further states, "We have never required exacting compliance with the rules to effect service of

process[, but instead] inquire whether the plaintiff has sufficiently complied with the rules

such that the court has personal jurisdiction of the defendant and the defendant has notice of

the proceedings."  <u>Id.</u>

      After consideration, the court determines that under either definition of authorized

person, CDM sufficiently complied with Rule 4 so as to confer personal jurisdiction over

Thalle and put Thalle on notice of the proceedings.  In fact, there is no dispute that on the

same day the third-party complaint was received by certified mail, it was immediately

forwarded to Mirabelli, Thalle's corporate administrator.  (Thalle Mem. Supp. Thalle's Mot.

Ex. A (Mirabelli Aff. ¶¶ 9,13).)  It is undisputed that the third-party summons and complaint

were sent via certified mail, return receipt requested, and delivery restricted to the addressee.

(<u>Id.</u> Ex. A. (Mirabelli Aff. ¶¶ 6,10).)  Moreover, the only objection Thalle has with regard to

service of process is who actually signed for the certified mail.  Because the certified mail was

immediately forwarded to Mirabelli, the dual purpose of Rule 4 was met.  Therefore, to the

extent Thalle moves to strike entry of default pursuant to Rule 12(b)(5), that motion is denied.

---

     [4]CDM argues that the facts of <u>Roche</u> are persuasive.  In <u>Roche</u>, a summons and
complaint was mailed via certified mail, return receipt requested, delivery restricted to
addressee.  456 S.E.2d at 899.  The letter was addressed to the certified agent, but instead the
vice president signed the return receipt.  <u>Id.</u>  The court found that the defendant failed to show
that the vice president was an unauthorized person to accept service.  <u>Id.</u> at 900.  Under the
definition set forth in Rule 4(d)(3), the vice president is authorized to accept service on behalf
of a corporation.

**B. Motion for Relief from Entry of Default - Rule 55(c)**

Alternatively, Thalle moves for relief from entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. Rule 55(c) states, "For good cause shown the court may set aside an entry of default . . . ." Fed. R. Civ. P. 55(c). "Traditionally, . . . relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which if believed, would permit either the Court or the jury to find for the defaulting party." Id. Other factors to consider include "the personal responsibility of the party, prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987).

In this case, default judgment has not been entered, but the clerk has entered default. Rule 55(c) permits a court to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). "Federal Rule of Civil Procedure 55(c) must be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." Lolatchy, 816 F.2d at 954 (internal quotation marks omitted). "Although the criteria set forth in Rule 60(b) may be relevant to the determination of the presence of good cause, the standard for good cause under Rule 55(c) [for relief from entry of default] is more liberal than the standard for relief from judgment under Rule 60(b)." Philips v. Weiner, 103 F.R.D. 177, 181 (D.C. Me. 1984); see also Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989).

9

Thalle urges the court to set aside entry of default and grant Thalle additional time to respond. Based on the facts set forth above, the court finds that Thalle has demonstrated good cause and excusable neglect. Furthermore, the court finds that Thalle acted with reasonable diligence in seeking to set aside the default and has tendered a meritorious defense. Therefore, applying the factors set forth above, the court sets aside the entry of default and allows Thalle fifteen days from the date of this order to file a responsive pleading. See Fed. R. Civ. P. 6(b) (allowing the court to extend time to answer when "the failure to act was the result of excusable neglect"); see also Lolatchy, 816 F.2d at 954 ("Federal Rule of Civil Procedure 55(c) must be liberally construed in order to provide relief from the onerous consequences of defaults and default judgment." (internal quotation marks omitted)). Because the court grants Thalle's motion to set aside the clerk's entry of default, CDM's motion for default judgment is moot.

Therefore, it is

**ORDERED** that Thalle's motion to strike entry of default pursuant to Rule 12(b)(5),

docket numbers 53 and 103, is denied.  It is further

**ORDERED** that Thalle's motion to set aside entry of default and extend the time to file

an answer, docket numbers 53 and 103, is granted.  Thalle shall have fifteen (15) days from

the date of this order to file a responsive pleading to CDM's third-party complaint.  It is

further

**ORDERED** that CDM's motion for default judgment, docket number 51, is dismissed

as moot.

**IT IS SO ORDERED.**


                                        s/Henry M. Herlong, Jr.
                                        United States District Judge


Greenville, South Carolina
April 11, 2006